EDWARD H. RULOFF, Plaintiff in Error, v. THE PEOPLE, &c., Defendants in Error.

(GENERAL TERM, THIRD DEPARTMENT, FEBRUARY, 1871.)

On the trial of an indictment for murder in the first degree, it appeared that the prisoner (as it was claimed by the prosecution) and two others had burglariously entered a store in the night, and, having collected property for removal, were discovered by the deceased and a fellow-clerk, who had been sleeping there; the prisoner and one of his accomplices ran out, while the third burglar, arrested and disabled by the clerks, called for help; and the two who had gone out returning, the clerks left the disabled burglar to meet them; the deceased encountered one of the burglars and obtained the mastery of him; the remaining burglar fired several shots at the other clerk, and then approaching the deceased, at the distance of a few inches, fired a ball into his head, causing his death. — Held, that it was for the jury to say whether the deceased was unnecessarily engaged in an attempt to kill.

Mention to the jury of the fact that the prisoner had not testified, and that the only recital of the incidents of the killing was by one of the clerks, made by the judge in his charge, while commenting upon the testimony, is not to be regarded as conveying an impression that an unfavorable inference is to be drawn from the fact that the prisoner had not been sworn.

Nor, under such testimony, is it error if the judge instruct the jury that the prisoner is not entitled to the most lenient construction of his motives.

And it is competent, in such case, to prove combination or conspiracy between those alleged to have been engaged in the burglary, and to submit photographs, taken of the burglars after death, to witnesses, and to permit them to use the stereoscope, in order to identify them as former associates and confederates with the prisoner.

THE prisoner was tried upon an indictment and convicted of murder in the first degree, at the Broome county Oyer and Terminer, and brought error to this court.

It was shown by the prosecution that an attempt had been made to commit burglary at a store in Binghamton on the night of August 17, 1870. Merrick, the deceased, was at the time a clerk in the store, and he and Burrows, a clerk in the same store, were sleeping there at the time of the attempted burglary, and were awakened from sleep by the presence of the burglars, who were three in number, and had

collected property together in packages for removal.   One of the burglars was seized by Burrows, thrown down, and seriously injured; his confederates escaped from the store; but returned on hearing his cries for help, when the clerks, who were engaged with the remaining burglar, went to meet them. The deceased encountered the first of the approaching burglars, and the other, coming up the stairs leading into the store, fired several shots, which splintered the wood work and caused the splinters to strike and wound Burrows, who was going toward him and at whom the shots were fired.   This last burglar, who was alleged to be the prisoner, then went forward to where the deceased was clenched with and held the remaining burglar at a disadvantage, and, placing his pistol within a few inches of his head, shot him, causing his death soon after.   The three burglars then fled from the building.

It also appeared that two bodies were taken soon after from the Chenango river in the immediate vicinity of the store, and that the track of two persons had been discovered leading to the river from the store, on the day succeeding the homicide. Evidence was given to identify these bodies as those of two of the burglars; and it was claimed by the prosecution that they were the bodies of the two who had been engaged in the struggles with the deceased and Burrows, and that the prisoner, who was arrested a few days after the homicide, while attempting to make his way out of the village along the railroad track in the dead of night, and who was uninjured, was the missing or third burglar.

Evidence was given to show that the alleged deceased burglars were Davenport and Jarvis by name, and that those persons had been the intimate companions and associates of Ruloff, the plaintiff in error, and, besides other evidence of their identity as such associates, witnesses were allowed to examine photographs of the deceased, taken after they were found dead in the river, and to express the belief founded thereon as to their identity; and they were also permitted to use the stereoscope in examining the photographs.

Objections were taken to this evidence by the prisoner's counsel, and also to certain portions of the judge's charge, referred to in the opinion of the court.

*George Becker* and *C. L. Beale*, for the plaintiff in error.

*P. W. Hopkins*, District Attorney, and *M. B. Champlain*, Attorney-General, for the defendant in error.

Present—MILLER, P. J., POTTER and PARKER, JJ.

MILLER, P. J. The counsel for this prisoner claims that the verdict of the jury was erroneous and not warranted by the evidence or the law applicable to the case. This position is based upon the ground that the deceased, at the time, was, with his companion and associate, engaged in an attempt unnecessarily to kill one of the persons who had participated in the burglary, and that the killing was done in resisting such attempt, which it is insisted, at most, rendered the prisoner guilty of manslaughter. (2 R. S., 661, § 11.) The question whether the deceased was unnecessarily engaged in an attempt to kill, must, I think, be regarded as a question of fact for the consideration of the jury upon the trial, and appears to have been fully and properly presented to them by the judge in his charge. The uncontradicted testimony shows that the store had been burglariously entered, and some of the property which it contained had been prepared for removal. The two clerks who were there were suddenly awakened, confronted by the perpetrators of the crime. The burglars stood around their bedside disguised, armed, and the circumstances clearly indicate with a deadly intent, as human life was taken. Burrows and Merrick made resistance, as they had a lawful right to do ; and although two of the burglars had fled, they were justified, I think, in defense of the property committed to their charge, to use sufficient force to protect it ; and if, as it would seem, there was reasonable ground to believe, as the subsequent facts indicate, that their lives were in danger, to use means to pro-

tect them.    Homicide is justifiable when committed by a per-
son in resisting an attempt to murder such person, and in law-
ful defence of such person where there shall be reasonable
ground to apprehend a design to commit a felony, or to do
some great personal injury, and there shall be imminent dan-
ger of such design being accomplished.    (2 R. S., 660, § 3.)

Can it be said there was no such attempt or design, when a
burglary had been committed, and when human life was
actually taken?    The inevitable inference to be drawn from
the circumstances which attended this crime, by those who
were assailed by the criminals who had perpetrated it, was
that they intended to commit a felony, and in carrying out
their purpose, when detected and likely to be exposed and
arrested, were willing to take human life.    It would, in my
opinion, be giving a license to those who commit felonies of
this character to hold that under such a state of facts the
party assailed was bound to wait and discover some other
manifestation of a criminal intent before resorting to such
means as lay in his power to protect his person and property.
It may also be remarked that the fact of assailing the burg-
lar, in the manner described by the witnesses, by no means
indicated an intent to kill, and may merely have been
designed to disable him, and protect the clerks from assault
and injury.    But this, with the question of intent to take
life unnecessarily, were proper considerations for the jury.

The charge of the judge on this subject, and his refusals to
charge as requested, were in accordance with these views,
and, I think, were not erroneous in any respect.

It is insisted that the judge erred in that portion of his
charge to the jury in which he stated that " the prisoner, if
he was present, has not been sworn, and Burrows is the only
person who relates the incidents of that night."    Also in
those portions of the charge in which he says, " all those
things are proper subjects of consideration by you," and " it
is true the prisoner is not bound to be sworn."    Also in say-
ing, " but all these things you have a right to consider, and
draw your inferences from them."

The counsel for the prisoner claims that those portions of the charge were calculated to mislead the jury, and to defeat the object of the act of the legislature, which provides that in trials and other proceedings for criminal offences the person charged shall, at his own request, but not otherwise, be deemed a competent witness; but neglect or refusal of any such person to testify shall not create any presumption against him.   (S. L. of 1869, § 1.)

The first part of the charge excepted to was made in commenting upon the testimony as to the person who fired the shot which caused the death of Merrick, and the remark made was simply a statement in regard to this branch of the case, which, I think, might very properly be made without conveying an impression that an unfavorable inference was to be drawn by the jury from the fact stated.   It is, really, a part of the *res gestæ*, which could not well be presented without incorporating this fact, and it is evident that there was no intention on the part of the judge to create any wrong impression on the minds of the jury by the language employed.

The subsequent remarks were made after the judge had stated that certain circumstances which bore against the prisoner were proper subjects of consideration by the jury; and, after saying that the prisoner was not bound to be sworn, he remarked: "It is true the prosecution are bound to make out their own case, and must satisfy you that by evidence on their own part," and then added the words which include the last portion excepted to.   I think neither of the observations of the judge were calculated to convey any erroneous impression to the minds of the jury.   When the judge said that the prisoner was not bound to be sworn, he merely stated the law applicable to this branch of the case, which, of itself, could not be regarded as prejudicial to the prisoner, and, perhaps, might be considered as exonerating him from any unfavorable inference arising from the fact that he had not been sworn; and when the judge said that the jury had a right to consider these things and draw their own inferences, I do not understand that he meant to refer to the remark that

the prisoner was not bound to be sworn, but alluded to what he had previously said, before he stated what the law was, as the matters which were to be considered. The expressions prior and subsequent to the matter excepted to are almost precisely alike, and the jury were to consider "these things," that is, the circumstances which he had stated as bearing on the question, and not the law, which did not require the prisoner to be sworn.

This interpretation of the charge was made by the judge when the exception was taken, as is evident by the remark made that "I supposed those were remarks in your favor, but you have a right to except to them," and by an additional charge to the jury to the effect that "there is no law requiring the prisoner to be sworn; there is no inference to be drawn against him from the fact of his not being sworn."

The cases cited by the defendant's counsel in support of this point do not, I think, uphold the doctrine that there was error in the charge. In *Crandall* v. *The People*, 2 Lansing, 309, the court held that it was error, against the objections of the prisoner, to permit the counsel for the prosecution, in addressing the jury, to comment on the omission of the prisoner to be sworn as a circumstance against him, or a fact to be considered in determining the case; but as no comments were made after the objection was taken, the conviction was sustained. As we have seen in the case at bar, the comments made cannot be regarded as injurious to the prisoner, and, therefore, the case cited does not affect the question involved. The other cases referred to relate to questions which do not arise here, and I think have no direct bearing upon the point discussed.

It may, perhaps, be said that the judge had a right to correct and explain the charge excepted to, as was done; but independently of this view of the matter, I think it is not liable to a construction unfavorable to the prisoner.

There was no error in that portion of the charge where the judge commented upon the construction to be placed upon the motives of those who committd the crime or burglary    It

is undoubtedly true, and the judge was right in saying, that they were not entitled to the benefit of the most innocent and merciful construction of their motives. Those who take the law in their own hands and depredate upon the property of others, by committing the most heinous offence known to the law, with weapons of death in their command, are certainly not entitled to claim that their motives are innocent, and entitled to a merciful consideration.

It was competent, I think, for the prosecution to prove a combination or conspiracy between the prisoner and the other persons alleged to have been engaged in the burglary. So, also, the testimony relating to the identification of Jarvis and Davenport by means of the photograph and the use of the entitled stereoscope was properly received.

The question as to the identity of the prisoner was a question of fact for the consideration of the jury, and the testimony relating thereto was properly submitted to them.

I have carefully examined the other questions raised by the counsel for the prisoner, and am of the opinion that none of them are well founded.

There was no error upon the trial and the judgment must be affirmed.

Conviction affirmed.